## McBride *versus* Smyth.

1. A testator devised the residue of his estate to trustees until his youngest child who might then be living should attain twenty-one years, and when his youngest child who might be living should attain that age, he gave it *to such of his children as might then be living and their heirs.* A child who died before that time took nothing under the devise.

2. No vested interest was given; the devises were contingent and became vested,—when the youngest child living reached 21,—in such children as were then in life.

3. The provision was not a postponement of the time of enjoyment; it was a selection of individuals from a class; a description of persons, not a regulation of the interest given.

4. A gift to such of a number of persons as may meet a defined description, is not a gift to all the persons whether they meet the description or not.

5. A court may strike out unmeaning and repugnant phrases, when the meaning of the testator admits of no doubt.

6. In an estate given to trustees in whatever form it is given, the trustees take such an estate as will enable them to execute the trust.

7. A limitation of real estate to trustees, their executors, administrators and assigns, will give them an estate in fee, if the purposes of the trust require it; and a devise to trustees and their heirs gives less than a fee, if a less estate will answer the purposes of the trust.

8. A separate use for a woman cannot be created, unless she is covert or unless in immediate contemplation of marriage.

February 6th 1867. Before Woodward, C. J., Thompson, Strong and Read, JJ. Agnew, J., at Nisi Prius.

Appeal from decree at Nisi Prius in equity, where it was a bill by Mary McBride, widow, Mary Jane Rodgers and James B. Rodgers her husband, Isaac McBride, Elizabeth McBride, Andrew T. McBride and Francis McBride against James Smyth, to compel the specific performance of a contract to purchase certain real estate, formerly the property of Francis McBride, deceased.

The hearing at Nisi Prius was on bill and answer, and a decree *pro formâ* was entered dismissing the bill; the complainants appealed.

The decedent, Francis McBride, died about January 1847, leaving a will dated December 23d 1846, and seised of the real estate in question.

By his will, amongst other things, he provided :—

"All the rest, residue and remainder of my estate, real, personal and mixed, I give, bequeath and devise unto my wife, Mary McBride, my two brothers, Andrew McBride and Matthew McBride, and my son, Matthew McBride, their executors, administrators and assigns, and to the survivor and survivors of them, and to the executors, administrators and assigns of the survivors and survivor of them, for the term of and until my youngest child, who may then be living, shall attain the age of twenty-one years * * * in trust upon the marriage of my daughter, Mary Jane, should she marry before my youngest child, who may be living, shall attain the age of twenty-one, to pay to my said

daughter out of the rents, &c. * * * $500, and after her marriage, and until my youngest child shall arrive at twenty-one years of age, out of the rents, &c., to pay to her $100 every year; the said $500, and the said annual sums to be for her sole and separate use * * * in trust, also out of the rents, &c., * * to pay for the education of my son Matthew, &c. * * $1000.

" And upon the further trust, that so long as my said wife shall remain my widow, unmarried, and until my youngest child, who may then be living, shall attain the age of twenty-one years, to pay to her all the rest, &c., of the rents of the estate, out of which she shall educate any my children, &c., * *   And in case my wife should marry before my youngest child should arrive at twenty-one years of age, to pay to my said wife, for her sole and separate use, one-third part of the said rents, &c., until my youngest child shall arrive at the age of twenty-one years, &c., * * * and to apply the remaining two-thirds of the said rents, &c., to the education, &c., of my children.

" And in case my said wife shall die before my youngest child, who may then be living, shall attain the age of twenty-one years, then in trust to apply the whole of the said residue of the said rents, &c., * * for the education, &c., of my children, &c. And upon the youngest of my children who may be living attaining the age of twenty-one years, then I give, devise and bequeath unto my said wife, for and during the term of her natural life, one full equal third part of all the rents, issues and profits of my estate, real, personal and mixed, that may at that time be in the possession of or under the control of the trustees hereinbefore appointed, and subject to the estate therein hereby given to her, I give, devise and bequeath all my said estate, real, personal and mixed, to such of my children as may be living when the youngest of them living shall attain the age of twenty-one years, their heirs, executors and administrators, share and share alike.

" I hereby direct that the interests and estates hereinbefore given to my wife and to my daughter, shall be respectively for their sole and separate uses, &c." * *

At the execution of the will, Francis McBride had the following children: Mary J., then aged nineteen; Matthew, then aged sixteen; Isaac, then aged fourteen; Lizzy, then aged eleven; Thomas, then aged eight; Francis John, then aged six; Andrew T., then aged four; and Francis M., then aged two. Matthew died in 1863, before the youngest child came of age, intestate and without issue, but leaving a widow, Mary A. McBride, who is still surviving. Mary J. has since married James B. Rodgers. Thomas and Francis John are dead.

On the 1st of May 1866, the widow and surviving children of the testator offered the premises in question at public sale through an auctioneer; they were struck down to the defendant

[McBride v. Smyth.]

at his bid for $8700.    He signed the contract drawn in the form used by the auctioneer, and paid $200.

He declined to fulfil the contract, on the ground that the widow of Matthew, a deceased son, was entitled to dower, and that the share of Mrs. Rodgers, the married daughter, having been settled to her separate use, she could not convey a good title.

*E. S. Miller*, for appellants, cited Smith on Executory Interests, §§ 281–4, 366 ; Duffield *v.* Duffield, 1 Dow & Clark 268 ; Tucker *v.* Harris, 5 Sim. 538 ; Jarman on Wills 658 ; Taylor *v.* Bacon, 8 Sim. & Stu. 100 ; Smith *v.* Starr, 3 Wh. 62 ; Hammersley *v.* Smith, 4 Id. 126.

*H. Wharton*, for appellee.—The devise to the trustees is a chattel interest only :   Hill on Trustees 240, notes g and k ; Smith on Executory Interests, § 245.    Courts will correct a blunder or omission ; 1 Redfield on Wills, 1st ed. 445 ; Leaming *v.* Sherratt, 2 Hare 14 ; Parker *v.* Sowerby, 1 Drewry 488 ; Lloyd *v.* Lloyd, 3 Kay & J. 20 ; Cooper *v.* Cooper, 29 Beav. 229 ; Hawkins 254 ; 2 Jarman on Wills 450 ; Womrath *v.* McCormick, 1 P. F. Smith 504.

When the youngest child attained twenty-one, that was only the period at which the present possession and enjoyment of the estate began : Festing *v.* Allen, 12 M. & W. 279 ; Bull *v.* Pritchard, 5 Hare 567 ; Hawkins on Wills 24, n. ; Browne *v.* Browne, 3 Sm. & Giff. 568 ; 2 Redfield on Wills 606, 612, n. ; Holmes *v.* Prescott, 10 Jur. N. S. 587, 33 L. J. Ch. 264 ; Doe *v.* Provoost, 4 Johns. R. 61 ; Doe *v.* Hopkinson, 5 Q. B. 223 ; Riley *v.* Garnett, 3 De G. & Sm. 629 ; Browne *v.* Browne, 3 Sm. & Giff. 568, 26 L. J. Ch. 635 ; Boraston's Case, 3 Co. 23 ; Mansfield *v.* Dugand, 1 Eq. Cas. Abr. 195 ; Smith on Executory Interests, § 340, a ; Simmons *v.* Cook, 29 Beav. 45 ; Evans *v.* Evans, 9 Barr 190 ; 1 Washb. on Real Property 212 ; 3 Prest. Abst. 373.    As to separate use for daughter, Hill on Trustees 419 ; Smith *v.* Starr, 3 Wh. 67 ; Barrett's Appeal, 10 Wright 392 ; Kuhn *v.* Newman, 2 Casey 227 ; Potts's Appeal, 6 Id. 168.

The opinion of the court was delivered, February 25th 1867, by
STRONG, J.—The first question raised by the bill and answer is whether the children of Francis McBride, the testator, took, under his will, a vested interest in the lands described, at his death, or whether, whatever interest any of them took under the will, vested first when the youngest child attained the age of twenty-one years.    In regard to this we have no doubt.    The testator devised all the residue of his estate, including the property described in the bill as sold to the defendant, to trustees, to hold until his youngest child who might then be living should

[McBride. *v.* Smyth.]

attain the age of twenty-one years, upon certain defined trusts, and upon the youngest of his children who might be living attaining the age of twenty-one years, he gave, subject to a provision for his widow, all his said (residuary) estate, real, personal and mixed, *to such of his children as might be living at that time, their heirs, &c.* This is not a mere postponement of the time of enjoyment. It is a selection of individuals from a class to be donees of a right; a description of persons, not a regulation of the interest given. It is impossible to admit that a gift to such of a number of persons as may meet a defined description, is a gift to all the persons, whether they meet the description or not. The rule of legal construction, as well as the testamentary intent in such cases, is well stated in Smith on Executory Interests, page 281. It is this: " Where real or personal estate is devised or bequeathed to such children or to such child or individuals as shall attain a given age, or the children who shall sustain a certain character, or do a particular act, or be living at a certain time, without any distinct gift to the whole class, preceding such restrictive description, so that the uncertain event forms part of the description of the devisee or legatee, the interest so devised is necessarily contingent on account of the person. For, until the age is attained, the character is sustained, or the act is performed, the person is unascertained ; there is no person answering the description of the person who is to take as devisee or legatee." If then we are to seek for the intention of the testator in the language of his will, we must conclude he gave no vested interest in his residuary estate to any of his children, that the devises were contingent and became vested only, when the youngest child living attained the age of twenty-one years, in such children as were then in life.

It is argued by the appellee that this construction excludes the widow and issue of any child who may have died before the designated period of vesting arrived, and that the testator ought not to be supposed to have intended such an exclusion. We are, however, in searching for his intent, confined to what he said. It is not ours to make a will for him, however improvident or inequitable we may think the dispositions he made. A court may indeed strike out unmeaning and repugnant words and phrases, when the real meaning of a testator admits of no doubt. But to strike out, as it is suggested we may in this case, from the description of devisees the words " such of" and " as may be living," and make it read *my children*, is more than striking out redundant, unmeaning and repugnant words. It is substituting devisees for those designated, and that, when there is nothing to show that the testator's intention requires it. The words are not redundant, nor are they unmeaning or repugnant to any plain wish of the testator. Nor can we transpose the

[McBride v. Smyth.]

words so as to make them mean a very different thing from that which they express as used in the will. Equally unwarranted should we be in inserting after the description of devisees ("such of my children as may be living when the youngest of them living shall attain the age of twenty-one years,") the words "and the issue of such as shall then be dead." To do so involves the assumption that such was the testator's intent; an assumption which rests upon nothing in the will itself, but solely upon conjecture.

It is then an unavoidable conclusion that Matthew McBride, the child who died before the youngest child of the testator attained the age of twenty-one years, took no vested interest in the property under the will of his father.

We next inquire whether he took under the intestate laws, an estate of inheritance of which his widow is dowable. If the precedent gift to the trustees was the gift of a mere chattel interest, the freehold vested in the children of the testator, subject to that interest. And it continued in the children or their heirs until the executory devise took effect. Whether such a seisin, subject to full and exclusive possessory rights in the trustees during the entire period during which the seisin could continue, and liable to be divested by an event which has no connection with the death of a husband, is sufficient to entitle the widow to dower, would be a very grave and difficult question, if it were necessary to answer it. It is not the case of Evans v. Evans, 9 Barr 190. But we are relieved from the necessity of determining it, for we think it the true construction of the will of Francis McBride, that the devise to his trustees was a freehold, rather than a chattel interest. It matters little in what form of words the estate was given, whether the testator employed words of limitation or not. An estate was given to them for an avowed use; to support a trust; and they must therefore be held to have taken such an estate as enabled them to execute the trust. The fact that the devise was to them, their executors, administrators and assigns, and not expressly to them and their heirs, or to them for life, is not conclusive that they took but a chattel interest. Nor is the fact that it was given to them "for the term of and until the youngest child who may then be living shall attain the age of twenty-one years," conclusive of the same thing, as it might be if a trust was not attached to the corpus of the gift. We are at liberty to look to the trust in order to ascertain the nature and extent of the legal estate given. A limitation of real estate to trustees, their executors, administrators and assigns, will even give them an estate in fee simple, if the purposes of the trust require it: Gibson v. Lord Monfort, 1 Ves. 491, as held by Lord Hardwick, and Headson v. Williamson, 1 Keen 41. It is the duration and character of the trust, rather than the devising

words to the trustees, that must determine the estate which they take. See authorities collected upon this subject in Hill on Trustees 245, *et seq.* It will be found that even a devise to trustees and their heirs gives less than a fee, if a less estate will answer the purposes of the trust superadded, and a devise to trustees and their executors, administrators and assigns, will confer a freehold, or even a fee, if such be necessary for a trust.

In the present case we find a trust fastened upon the devise to the trustees for the testator's daughter Mary Jane, and also for his son Matthew. This trust was limited. But there was a further trust. It was that, so long as the testator's wife should remain his widow unmarried, and until his youngest child unmarried should attain the age of twenty-one years, all the rents, issues and profits of the estate should be paid to the widow. A gift during widowhood is a gift for life, or rather the estate in the thing given is an estate for life; a freehold, if the subject be realty. It is none the less so because it may be determined by the marriage of the devisee. Estates for life not unfrequently depend upon a contingency which may happen before the death of the tenant for life. They will last the lifetime if not determined by the contingency, and therefore may be freeholds. Here the trust in favor of Mrs. McBride would have continued during her life, if not determined by her marriage, or the contingency that some child might attain the age of twenty-one years. She took then a life estate under the will, subject to be determined in part by contingencies, and if she took a freehold in the beneficial interest, the trustees necessarily took a freehold in the legal estate determinable, indeed, on the happening of the contingency, but a freehold while it lasted. The consequence of this is, that nothing descended under the intestate laws to the children of the testator, and Matthew McBride, his son, was never seised of any estate of inheritance of which his widow was dowable. This objection to the title offered by the defendant is then not substantial. The widow of a child of the testator who died before the youngest child attained the age of twenty-one years, is not entitled to dower.

The other objection may be dismissed in few words. The will created no sole and separate use for the testator's daughter Mary Jane. She was single when the testator died, and the separate use was not directed in contemplation of marriage. Whatever may be the rule in the English courts, it is here too well established to be disturbed by anything else than a legislative enactment, that a separate use for a woman cannot be created unless she is covert, or unless in immediate contemplation of her marriage: Potts's Appeal, 6 Casey 168 ; Dubs *v.* Dubs, 7 Id. 149.

It follows that the title offered by the complainants was not defective on account of any existing right of dower in Matthew

[McBride v. Smyth.]

McBride's widow, and there was no inability in Mary Jane Rodgers to convey.

The decree entered at Nisi Prius is reversed, and specific performance decreed.