## Wolstenholme Estate

*Samuel W. Morris, William E. Lingelbach, Jr.*, and *Morgan, Lewis & Bockius*, for exceptant.

*Edwin J. McDermott, E. C. Shapley Highley* and *Spiegel & Highley*, contra.

BOLGER, J., April 16, 1962.—The fund involved is the principal of the trust for the life of Florence Hickman, testatrix' daughter, who died January 12, 1961, and is the last of three funds established for the testatrix' surviving children, the other two funds having been distributed.

At the audit, two grandchildren of the testatrix, Alfred Hickman, son of Florence Hickman, and Adelaide Wolstenholme, daughter of Alfred Wolstenholme, claimed the entire fund to the exclusion of three great-grandchildren, two of whom, Benjamin R. Caskey, Jr., and Barry Hickman Caskey are children of Muriel Caskey, who was a daughter of Florence Hickman and sister of Alfred Hickman and died at age 30 before her mother, and Ronald DuBree, son of Walter DuBree, grandson of Emily DuBree Allen, a daughter of the testatrix, who predeceased testatrix.

The learned auditing judge, in a studied and comprehensive opinion, awarded the fund in four equal shares, one each to Alfred Hickman and to Adelaide Wolstenholme, one to the Caskey children equally, and the fourth to Ronald DuBree.

Alfred Hickman has filed exceptions to these awards. Adelaide Wolstenholme has not joined in the exceptions.

The adjudication also awarded $10,000 compensation to Alfred Hickman, substituted trustee. Exceptions to this award have been filed by the accountant who claimed $12,500, and also by the other beneficiaries, who asserted the allowance is excessive.

After disposing of personal effects, including jewelry and furniture, two $5,000 pecuniary legacies and directing the sale of her residence, testatrix's residual plan was the establishment of trusts for her three children equally for life and, upon their deaths, income per capita to her grandchildren until age 35, including Walter Elwood DuBree, son of testatrix's predeceased daughter, Emily DuBree Allen (whose share, however, is to be only for life with gift over of income to his children until 21 and principal at 21). At 35, her grandchildren (except Walter Elwood DuBree) were given the shares of principal from which they were receiving income. However, if all attained age 35, upon the death of any one or more of the testatrix's children, then the grandchildren were to receive principal per stirpes (except Walter Elwood DuBree). Upon the death of a grandchild before 35 (except Walter Elwood DuBree) leaving issue, whether said grandchild dies before or after the testatrix, then to the issue of grandchildren per stirpes (except Walter Elwood DuBree) that portion of principal from which the grandchild or grandchildren had been receiving or were theretofore entitled to receive income. In default of issue of a grandchild, then to all surviving grandchildren (except Walter Elwood DuBree) per stirpes. In

practically every instance, the testatrix in disposing of principal in gifts over describes the share of principal which the beneficiary is to receive as that portion of principal or corpus from which he or she had been receiving income.

The problem presented is whether the children of Muriel, a daughter of Florence Hickman who survived the testatrix but died before the life tenant at age 30, and Ronald DuBree, son of Walter Elwood DuBree who predeceased the life tenant, share in the principal fund now before the court.

We are of unanimous opinion that the conclusions of the learned auditing judge are correct.

As stated in the adjudication, the demands of the exceptant would require that we delete from the will or ignore completely the dominant and controlling pertinent phrases: "In further trust in the event of the death of any of my grandchildren, except Walter Elwood DuBree, before attaining the full age of thirty-five years, leaving issue my said grandchild surviving, whether said grandchild dies before or after me . . ." and likewise the later gift in the same item following the gift of income for life to her grandson, Walter Elwood DuBree: "In the event of my grandson, Walter Elwood DuBree, leaving issue my said grandson surviving, then and in that event. . . ." These deletions we are powerless to accomplish: Bigony Estate, 397 Pa. 102; Horn Estate, 351 Pa. 131. Furthermore, the interpretation sought by the exceptant would lead to the disinheritance of great-grandchildren, which is repugnant to the testamentary intent. It may be true that the testatrix preferred grandchildren whom she knew over great-grandchildren whom she never knew, but not to the complete exclusion of the latter. The only expressed preference in the will is that in favor of all other grandchildren over the line of her deceased daughter, Emily, and that preference was limited to her daughter Emily's son, Walter Elwood DuBree

(whose interest is income for life as noted above), but not to the latter's son, Ronald DuBree. We do not find in the will the plain language or the necessary implication which would disinherit the great-grandchildren, an unnatural result: Walker Estate, 376 Pa. 16; Bigony Estate (supra).

Alfred W. Hickman, the exceptant, relies upon the phrases of the will which direct distribution of principal only to the issue of grandchildren of the testatrix, when, as and if the grandchildren of the testatrix through whom the issue claimed "were theretofore entitled to income . . ." constitutes a condition precedent to inheritance by great-grandchildren, children of Muriel Caskey and of Walter Elwood DuBree. These phrases of the will are not controlling.

This language is taken out of context and is rare in our experience. It is, we are satisfied, a clumsy and cumbersome attempt to describe, as the auditing judge said, the quantum of the gift. Read alone, the phrase possesses overtones of a condition precedent, but when read in context with the other language of the same paragraph and in the rest of the will, it is clear that if it were given the significance attributed to it by the exceptant, it would defeat the overall dominant intent of the testatrix.

It is palpable that any grandchild who predeceased the testatrix would never receive or be entitled to receive income because no estate was then in existence. In the same sense, Alfred Hickman, the exceptant, who attained the age of 35 before his life tenant-mother died, never received or was entitled to receive income on her share of the estate (the fund now in controversy), she being the sole recipient of income from that fund. The results flowing from the proposed interpretation would, therefore, be ridiculous and chaotic and would extend to disqualifying exceptant himself, a grandson. The language is inaccurate and incorrect and, therefore, cannot be relied upon to defeat the tes-

tatrix' plain intent: Irwin's Estate, 304 Pa. 200; Lifter Estate, 377 Pa. 227. Its phraseology is obscure and ambiguous, wherefore we must impute to it such a meaning as under the circumstances will conform to the testatrix' probable intention and be most agreeable to reason and justice and not lead to an unnatural or inequitable result: Clark's Estate, 359 Pa. 411. The overall testamentary intent is to benefit all issue, great-grandchildren as well as grandchildren, which is the result reached in the adjudication and which would be thwarted by the construction exceptant suggests.

There is another fatal defect in the exceptant's position. He does not qualify to share in the disputed portion of this gift because the condition precedent to his participation is that his sister, Muriel, die without issue: Whitman's Estate, 329 Pa. 377. Muriel's two sons are before us and so is Walter Elwood DuBree's son.

Wharton Appeal, 373 Pa. 360, cited by exceptant is different on its facts. There the will, in exercising a power of appointment, provided a saving clause that in the event that the trust continued until 21 years from the date of the testator's death, the trusts in the appointed estates should then terminate and the corpus be paid to the persons who were then entitled to receive income. This latter event happened and it was held that the daughter of the appointor's deceased son, who had theretofore received principal, but who was not then receiving income from the trust, was excluded from distribution. The language of the phrase was clear; it caused the termination of the trust and plainly determined the persons entitled. The doctrine of equality was rejected because the language of the will was clear. In the instant case, not only is the language unclear, but the will would have to be rewritten to accommodate the exceptant.

Exceptant, Alfred Hickman, further contends that

since the will provides for a gift over in the event of a grandchild dying before age 35 and that upon the death of a child, principal is to be held for the grandchildren and the income paid to them until they attain age 35, at which time they are to receive principal, it is perfectly possible that a grandchild could be born near the end of the life of the last life tenant and that all "measuring lives might terminate before this grandchild attained thirty-five", the will violates the rule against perpetuities. He asserts that such a grandchild could easily live more than 21 years after the death of the last "measuring life" and then die before attaining age 35, and that the gifts so made violate the rule against perpetuities, and in support thereof cites Coggins' Appeal, 124 Pa. 10. This point was not decided by the auditing judge. The argument now advanced overlooks the saving clause in the fifth paragraph of item 6:

"I have created the above trust with the full intention that complete distribution of the corpus or principal will be made within a period of twenty-one years after the death of my last surviving child, on account of the fact that all of my grandchildren have reached their majority. In the event of any of my children having further issue, I hereby direct that complete distribution of the corpus or principal of the trust estate hereby created shall in no event be postponed for a greater period than twenty-one years after the death of my last surviving child, so that any and all of the beneficiaries hereof shall be paid his or her respective share of the corpus or principal when they shall attain the age of thirty-five years or at the expiration of twenty-one years after the death of my last surviving child, whichever event shall first occur." The rule against perpetuities thus never became applicable: Friday's Estate, 313 Pa. 328. In Griscom's Estate, 336 Pa. 419, it was held that when a testator provides that

a remainder is to vest upon the happening of either of alternative contingencies, one of which violates the rule while the other does not, the remainder will be held valid if the contingency happens which does not violate the rule. The conditions in the instant case which did not violate the rule have occurred. The gifts over of principal here, therefore, do not offend the rule against perpetuities.

Respecting the several exceptions to the award by the learned auditing judge of compensation in the amount of $10,000 to the substituted trustee-accountant, we point to the rule of law that the allowance of counsel fees and compensation to accountants is peculiarly for the auditing judge and his conclusions, like the verdict of a jury, will not be disturbed except for apparent error: Bernstein's Estate No. 1, 25 D. & C. 628; Rhodes Estate, 394 Pa. 186. We find no apparent error in the award. The complete exposition in the adjudication of the substituted trustee's services speaks for itself and supports the sum awarded. We believe it to be fair for the unusual services rendered, for the responsibility incurred and the labor performed. There is no rate of percentage fixed by law as compensation for a trustee: Hunter Pa. O. C. Commonplace Book (2d ed.), Vol. 1; Commissions, §4(a).

All exceptions are dismissed and the adjudication is confirmed absolutely.

Judge Lefever concurs in this opinion except that portion dealing with compensation to trustee. As to that, he concurs in the result.